IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CROWE & DUNLEVY, P.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  09-CV-095-TCK-PJC** |
| | ) | |
| **GREGORY R. STIDHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION AND ORDER</u>

Before the Court are Plaintiff's Motion for Preliminary Injunction (Doc.   11) and

Defendant's Motion to Dismiss Complaint and Plaintiff's Application for Preliminary Injunction

(Doc. 17).

**I.     Background**

Plaintiff Crowe & Dunlevy ("Crowe") has represented the Thlopthlocco Tribal Town ("the

Tribe") for the past fourteen years.  The Tribe has been recognized by the United States as a separate

and distinct sovereign Indian band, and the Tribe has a Constitution and By-Laws.   The Tribe has

a historical relationship with the Muscogee (Creek) Nation, and many of its members hold dual

citizenship in both tribes. Pursuant to the Tribe's Constitution, the governing body of the Tribe is

the Business Committee.  The Business Committee is comprised of ten individuals and has the

power to transact business and act on behalf of the Tribe.

**A.     Muscogee Lawsuit**

On June 5, 2007, the Tribe became aware that one member of the Business Committee,

Mekko Nathan Anderson ("Anderson"), had attempted a *coup d'etat*.  The Tribe alleges that, after

serving on the Business Committee for five months, Anderson declared himself the only valid leader

and "appointed" a new government.  The Tribe claims that this action was unconstitutional, invalid,

and had no legal effect.  The Tribe further maintains that Anderson and his "co-conspirators" attempted to access the Tribe's bank accounts, issue resolutions on tribal letterhead, fire casino employees, and otherwise interfere with tribal business interests.

The Tribe was concerned that Anderson's actions would cause confusion with its business relations and therefore sought relief in the Muscogee (Creek) Nation District Court ("Muscogee Nation District Court") for the purpose of enjoining Anderson's allegedly unlawful actions ("Muscogee Lawsuit").  On June 7, 2007, the Tribe granted a narrow waiver of sovereign immunity in Business Committee Resolution No. 2007-21 ("Waiver").  The Waiver outlined the basis of the dispute with Anderson and then stated:

> [T]he Thlopthlocco Tribal Business Committee does hereby waive its immunity on a limited basis only for the purposes of adjudicating this dispute only, only claims brought by the Plaintiff, Thlopthlocco Tribal Town, and only for injunctive and declaratory relief.  This waiver of immunity shall not include election disputes.

(Ex. A-3 to Pl.'s Mot. for Prelim. Inj.)

Four days later, on June 11, 2007, the Tribe initiated the Muscogee Lawsuit by filing a Verified Complaint and Application for Emergency Restraining Order ("Verified Complaint") in the Muscogee Nation District Court against Anderson and other co-defendants who allegedly acted in concert with Anderson ("Anderson defendants").[1]   The Tribe was represented in the Muscogee Lawsuit by Michael McBride, an attorney at Crowe.  The Verified Complaint requested that the Muscogee Nation District Court enjoin the Anderson defendants from the following: (1) interfering with the duly elected officials of the Tribe; (2) interfering with the functions of the tribal

---

[1] The Anderson defendants include: Bryan McGertt, Timmy Cheek, Candice Rogers, Inda McGertt, Frank Harjochee, Virgil Sanders, May McGertt, Grace Bunner, Thelma Jean Noon, Wesley Montemeyer, Paula Barnes-Herrod, and Malinda Noon.

government; (3) taking any action contrary to the directions of the duly elected and appointed Business Committee; (4) removing any cash, proceeds, files, records, documents, equipment, fixtures, supplies or any other items from the Tribe's casino, any other business or entity owned by the Tribe, or from the Tribe's government; and (5) representing to banks or other financial institutions, corporations, businesses, consultants, organizations, law firms, accountants or other governments or individuals that they currently hold any office with the Tribe.  In response to the Verified Complaint, Chief District Judge Patrick Moore of the Muscogee Nation District Court entered an Order restraining the Anderson defendants from the acts listed above and declaring that any purported official actions taken by the defendants were null and void.  The parties have represented that this Order continues to govern and will remain in effect until the Muscogee Lawsuit is resolved.

On September 11, 2008, Defendant Judge Gregory R. Stidham of the Muscogee Nation District Court ("Defendant") granted a motion made by the Anderson defendants, which requested that their attorneys' fees be paid by the Tribe.  The Tribe appealed this order to the Muscogee Nation Supreme Court, which reversed the order as premature on January 16, 2009 ("January 16 Order").  In the January 16 Order, the Muscogee Nation Supreme Court found as follows:

> It is premature to determine the issue of attorneys' fees in this case until the lawful governing body of Thlopthlocco is determined.  Until then, it is unknown whether anyone among the litigants has the authority to vote to expend Thlopthlocco funds.  In the interest of fairness, it is therefore ORDERED that no party is entitled to attorneys' fees during the pendency of these proceedings.  The September 11, 2008 order of the District Court is reversed with instructions to dismiss Defendants' Motion for Attorney Fees as premature.
> It is further ORDERED that any attorneys' fees paid from the Thlopthlocco treasury to the Plaintiff's counsel be returned and re-deposited into the treasury.
> It is further ORDERED that at the conclusion of the District Court proceedings the District Court can determine the issue of attorneys' fees.

3

(Ex. A-5 to Pl.'s Mot. for Prelim. Inj.)  The Tribe filed a petition for re-hearing with the Muscogee Nation Supreme Court on January 26, 2009, which was summarily denied.  (Ex. A-6 to Pl.'s Mot. for Prelim. Inj. (stating "It is hereby Ordered by the Court that the Petition for Rehearing by Plaintiff Thlopthlocco Tribal Town is denied.").)

On February 5, 2009, Defendant ordered Crowe to "return all attorneys' fees paid from the Thlopthlocco Treasury with proof of repayment furnished to this court on or before February 20, 2009" ("February 5 Order").  (Ex. A-7 to to Pl.'s Mot. for Prelim. Inj.)[2]  On March 6, 2009, Defendant found that Crowe had not complied with his February 5 Order and ordered that Crowe appear for a show cause hearing for contempt of court on April 3, 2009.  The parties represent that since that time, Defendant has agreed to strike the show cause hearing in light of this Court's impending ruling on Plaintiff's Motion for Preliminary Injunction.

**B.**     **Federal Lawsuit**

Crowe initiated this suit on February 24, 2009, seeking a judgment declaring that the "Muscogee courts do not have jurisdiction over Crowe; do not have jurisdiction over the expenditure by Thlopthlocco of its governmental funds to Crowe; do not have jurisdiction over agreements entered between Thlopthlocco and Crowe; did not have jurisdiction to issue the January 16 Order as it related to Thlopthlocco's attorneys' fees; and did not have jurisdiction to issue the February 5 Order."  Crowe also requests that the Court enter judgment "declaring the January 16 Order as it relates to Thlopthlocco's attorney's fees, null and void and declaring the February 5 Order null and

_____

[2]  In Defendant's reply in support of his Motion to Dismiss, he represents that the Tribe has paid Crowe more than $371,000.00 in fees in conjunction with Crowe's work in the Muscogee Lawsuit.

void."   Finally, Crowe's Complaint seeks a preliminary and permanent injunction prohibiting Defendant from enforcing the January 16 and February 5 Orders.

Crowe filed a Motion for Preliminary Injunction on March 9, 2009, which seeks to enjoin Defendant from enforcing the February 5 Order or from otherwise attempting to enforce the January 16 Order as it relates to Crowe until this case is resolved.   In conjunction with his response to Crowe's Motion for Preliminary Injunction, Defendant filed a Motion to Dismiss, attacking this Court's subject matter jurisdiction.   A hearing on both motions was held before the Court on April 16, 2009.

## II.   Defendant's Motion to Dismiss

In his Motion to Dismiss, Defendant moves to dismiss Crowe's Complaint and Motion for Preliminary Injunction, arguing: (1) this case should be dismissed because the Court lacks subject matter jurisdiction; (2) this case should be dismissed because Crowe has failed to join all indispensable parties; and (3) in the event the Court declines to dismiss this matter, venue is improper and the case should be transferred to the United States District Court for the Eastern District of Oklahoma.

### A.   Subject Matter Jurisdiction

Defendant makes two arguments in support of his position that this Court does not have subject matter jurisdiction over this case: (1) he is entitled to judicial immunity as a judge of the Muscogee Nation District Court; and (2) he is entitled to sovereign immunity because he is an official of the Muscogee (Creek) Nation.

1.    <u>Judicial Immunity</u>

Defendant argues that as a judge of the Muscogee Nation District Court, he is entitled to judicial immunity from suit, mandating dismissal of this action. Defendant is correct that, in many circumstances, judges enjoy judicial immunity from suit. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages."); *Stein v. Disciplinary Bd. of Supreme Ct. of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008) ("The Supreme Court has long held that judges are generally immune from suits for money damages"); *Coleman v. Court of Appeals, Division No. Two*, 550 F. Supp. 681, 683-84 (W.D. Okla. 1980) ("[J]udges of courts of superior or general jurisdiction are not liable in a civil action for their judicial acts even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously.") ("The purpose of judicial immunity is to protect judges from the distraction, harassment and intimidation of actions against them for the exercise of their duties."); *see also Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003) (extending judicial immunity to tribal court judges).

However, this immunity is not without exceptions.  In *Pulliam v. Allen*, 466 U.S. 522 (1984), plaintiffs brought suit under 42 U.S.C. § 1983 ("§ 1983"), claiming that a magistrate judge's practice of imposing bail was unconstitutional and seeking injunctive relief.  The Supreme Court answered the "fundamental question [of] whether a judicial officer acting in her judicial capacity should be immune from prospective relief," *id.* at 528, and held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Id.* at 541-42. Although *Pulliam* involved a claim under § 1983, it has been applied outside the § 1983 context and has been applied to facts nearly identical to those at bar.  *See United States v. Yakima Tribal Court*,

6

806 F.2d 853, 861 (9th Cir. 1986) (affirming federal district court's decision to enjoin tribal court judge's enforcement of order when United States claimed that tribal court was without jurisdiction to issue order) (rejecting tribal court judge's assertion of judicial immunity, stating his "status as a tribal judicial officer does not confer immunity against injunctive relief") (citing *Pulliam*).  Because Crowe seeks prospective injunctive relief, it argues that *Pulliam* mandates the rejection of Defendant's assertion of judicial immunity.

Defendant disagrees, claiming that the question of whether *Pulliam* is still good law is "up in the air."  Specifically, in 1996, Congress enacted the Federal Courts Improvement Act of 1996 ("FCIA"), Pub. L. No. 104-317, 110 Stat. 3847, which amended the language of 42 U.S.C. § 1983 so as to bar injunctive relief against a judicial officer in a § 1983 action "for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."  *Id.* at § 309(c).  Although Crowe's Complaint does not arise out of §1983, Defendant argues that a footnote in the recent Tenth Circuit case of *Lawrence v. Kuenhold*, 271 Fed. Appx. 763 (10th Cir. March 27, 2008), demonstrates that courts are interpreting the FCIA to have effectively reversed *Pulliam* in its entirety.  Defendant therefore maintains that *Pulliam*'s holding regarding judicial immunity no longer applies in *any* action, regardless of whether such action is based on § 1983.

The Court finds Defendant's reading of *Lawrence* unfounded.  In *Lawrence*, plaintiffs brought suit against a state district court judge, alleging that the judge violated their due process rights by entering default judgment against them in a state court quiet title action.  The judge urged the Tenth Circuit to uphold the district court's dismissal of the action, arguing, *inter alia*, that he was entitled to judicial immunity.  In addressing this argument, the Tenth Circuit first noted that "[t]he

7

only type of relief available to a plaintiff who sues a judge is declaratory relief, *see Schepp v. Fremont County*, 900 F.2d 1448, 1452 (10th Cir. 1990), but not every plaintiff is entitled to this remedy." *Lawrence*, 271 Fed. Appx. at 766.  Immediately following this statement is footnote 6, which, according to Defendant's reading of the case, casts doubt on *Pulliam*'s applicability both inside and outside the § 1983 arena.  Footnote 6 states:

> In *Schepp*, we cited *Pulliam v. Allen*, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), for the proposition that a judge "is not shielded by absolute [judicial] immunity from declaratory or injunctive relief." 900 F.2d at 1452.  In 1996, Congress effectively reversed *Pulliam* with the enactment of the [FCIA] (amending 42 U.S.C. § 1983).  Section 309(c) of the FCIA bars injunctive relief in any § 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." Thus, the doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well.  *See Roth v. King*, 449 F.3d 1272, 1286 (D.C. Cir. 2006), *cert. denied sub nom., Sitomer v. King*, --- U.S. ----, 127 S.Ct. 1357, 167 L.Ed.2d 82 (2007) ("42 U.S.C. § 1983, as amended in 1996 by the [FCIA], explicitly immunizes judicial officers against suits for injunctive relief."); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (discussing the effect of the FCIA on *Pulliam*).

*Id.* n.6.  Although not specifically asserted by Defendant, the Court assumes that Defendant's reading of *Lawrence* is based on the sentence reading, "Congress effectively reversed *Pulliam* with the enactment of the [FCIA] (amending 42 U.S.C. § 1983)." *Id.*  However, this statement must be read within the context of the in-text discussion of judicial immunity, the placement of footnote 6, the substance of footnote 6, and the supporting case citations included therein.

With regard to the textual discussion of judicial immunity, the sentence immediately preceding footnote 6 indicates that plaintiffs are generally able to sue judicial officers for declaratory relief.  *Id.* at 766 (noting "[t]he only type of relief available to a plaintiff who sues a judge is declaratory relief").  This sentence continues to state that "not every plaintiff is entitled to this remedy," and footnote 6, which is placed at the end of this sentence, provides additional explanation

regarding the identity of those plaintiffs who are not "entitled to this remedy." The Tenth Circuit is therefore indicating that there are a *subset* of plaintiffs who are not entitled to the relief afforded in *Pulliam*, and that subset is discussed in more detail within footnote 6. Nowhere does the Tenth Circuit state that *all* plaintiffs are prohibited from seeking the relief permitted in *Pulliam*. Further, the discussion included in footnote 6 clearly indicates that this subset of plaintiffs is comprised of those suing under § 1983. *Id.* n.6 (discussing FCIA's amendment to § 1983). The footnote's case citations follow suit, as all concern instances where the plaintiff's claim was tied to § 1983. *Id.* (citing *Roth v. King*, 449 F.3d 1272, 1286 (D.C. Cir. 2006) (holding judges of Superior Court of District of Columbia were immune from § 1983 suit for injunctive relief) (noting "42 U.S.C. § 1983, as amended in 1996 by the [FCIA], explicitly immunizes judicial officers against suits for injunctive relief") and *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (finding district court properly dismissed plaintiffs' *Bivens* action against defendant judges pursuant to FCIA amendment to § 1983) (noting that § 1983 law is incorporated into *Bivens* actions)).

Based on these considerations, and in the absence of a clear direction from the Tenth Circuit indicating that *Pulliam* should no longer be applied outside the § 1983 context, the Court does not read *Lawrence* to render *Pulliam* inapplicable in this case. The Court accordingly finds that Crowe's suit is not defeated by judicial immunity, as it clearly seeks "prospective injunctive relief." *See Pulliam*, 466 U.S. at 541-42.[3]

---

[3] Defendant has not argued that Crowe's Complaint seeks anything other than "prospective injunctive relief."

2.    Sovereign Immunity

Second, Defendant argues the Court lacks subject matter jurisdiction over this case because he enjoys sovereign immunity from suit.  Specifically, Defendant maintains that because the Muscogee (Creek) Nation is protected by sovereign immunity, he, as an official of the tribe, also enjoys such immunity.  In response, Crowe does not challenge the inherent sovereign immunity of the Muscogee (Creek) Nation, but argues that tribal sovereign immunity does not shield Defendant from actions taken outside the scope of his authority.  Specifically, Crowe maintains that Defendant's actions in the Muskogee Lawsuit were outside the powers delegated to him because the Muscogee courts lack adjudicatory jurisdiction over Crowe's private fee agreements with the Tribe.

Indian tribal governments, such as the Muscogee (Creek) Nation, enjoy the same immunity from suit enjoyed by other sovereign powers and are "subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."  *Kiowa Tribe of Okla. v. Mfg. Tech.*, *Inc.*, 523 U.S. 751, 754 (1998).  This immunity applies to tribal government officials acting in their official capacity.  *See Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1296 (10th Cir. 2008) ("It is clear that a plaintiff generally may not avoid the operation of tribal immunity by suing tribal officials . . . . Accordingly, a tribe's immunity generally immunizes tribal officials from claims made against them in their official capacities.").

However, the doctrine of sovereign immunity as applied to officials is not absolute and is subject to certain exceptions, including the *Ex Parte Young* doctrine.  *See N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty.*, 991 F.2d 458, 460 (8th Cir. 1993) ("The protection of sovereign immunity is subject to the well established exception described in *Ex Parte Young*, 209 U.S. 124, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908).").  "*Ex Parte Young* recognizes an

10

exception to Eleventh Amendment immunity under which a state officer may be enjoined from 'taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainant.'" *Buchwald v. Univ. of N.M. School of Medicine*, 159 F.3d 487, 495 (10th Cir. 1998) (internal citation omitted).  "This exception enables federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Id.*  "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007) (citing *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Although the *Ex Parte Young* doctrine was originally applied in the context of a state official, this doctrine has been applied to assertion of tribal sovereign immunity by tribal officials.  *See, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978) (stating that a tribal officer was "not protected by the tribe's immunity from suit" when plaintiffs sought declaratory and injunctive relief and citing *Ex Parte Young* in support of this assertion); *BNSF v. Vaughn*, 509 F.3d 1085 (9th Cir. 2007) (stating that under *Ex Parte Young* doctrine, tribal sovereign immunity does not bar suit for prospective relief against tribal officers allegedly acting in violation of federal law); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida*, 63 F.3d 1030, 1050-51 (11th Cir. 1995) ("[The *Ex Parte Young* doctrine], as the district court properly concluded, applies in suits brought against tribal authorities in their official capacities."); *N. States Power Co.*, 991 F.2d at 460 ("*Ex Parte Young* applies to the sovereign immunity of Indian tribes, just as it does to state sovereign immunity.") (noting that the Tenth Circuit applied this exception in *Tenneco Oil Co. v. Sac and Fox Tribe of Indians*, 725 F.2d 572, 574 (10th Cir. 1984)); *Vann v. Kempthorne*, 534 F.3d 741, 750 (D.C.

11

Cir. 2008) (applying *Ex Parte Young* doctrine to assertion of tribal sovereign immunity by Cherokee Nation officers when plaintiffs made allegations of "ongoing constitutional and treaty violations" and sought prospective injunctive relief).

In this case, the Court finds application of the *Ex Parte Young* doctrine to be proper, as demonstrated in factually similar case law. Specifically, in *BNSF Railway Company v. Delbert W. Ray, Senior*, 2008 WL 4710778, No. 07-15076 (9th Cir. 2008) (unpublished), BNSF Railway Company filed an action seeking to permanently enjoin the chief judge of the Hualapai tribal court and the tribal court clerk from taking further action in a wrongful death action filed in tribal court. The Ninth Circuit stated that tribal sovereign immunity did not bar plaintiff's action against the tribal officials due to the application of the *Ex Parte Young* doctrine because the case sought "prospective injunctive relief against the tribal officers acting in their official capacities" and because plaintiff "alleged an ongoing violation of federal law" – namely, "the unlawful exercise of tribal court jurisdiction." *Id.* at *1.[4]

Similarly, in *Tamiami Partners, Limited v. Miccosukee Tribe of Indians of Florida*, 63 F.3d 1030 (11th Cir. 1995), the Eleventh Circuit affirmed the district court's application of the *Ex Parte Young* doctrine to tribal officers where the plaintiffs alleged that the named tribal officers "acted beyond the authority that the Tribe is capable of bestowing upon them under federal laws defining the sovereign powers of Indian tribes." *Id.* at 1045; *see also Burrell v. Armijo*, 456 F.3d 1159, 1174 (10th Cir. 2006) ("[W]hen a complaint alleges that the named officer defendants have acted outside

---

[4] Because *BNSF* involves facts similar to those in the instant matter, the Court cites this unpublished case for its persuasive value. *See United States v. Baldridge*, 559 F.3d 1126, 1143 n.11 (10th Cir. 2009).

the amount of authority *that the sovereign is capable of bestowing*, an exception to the doctrine of sovereign immunity is invoked") (emphasis added) (citing *Tenneco Oil Co.*, 725 F.2d at 574 ("If the sovereign did not have the power to make a law, then the official by necessity acted outside the scope of his authority in enforcing it, making him liable to suit."); *Burlington N.R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 902 (9th Cir. 1991) (citing *Ex Parte Young* for proposition that sovereign immunity does not extend to officials acting pursuant to an allegedly unconstitutional statute)).

Crowe has alleged the same ongoing violation of federal law as was asserted in *BNSF Railway Company* and *Tamiami* – namely, the unlawful exercise of tribal court jurisdiction. Crowe argues that, under the federal laws defining the sovereign powers of Indian tribes, Defendant does not have the lawful power to order the return of its attorney fees because Crowe is not subject to the jurisdiction of the Muscogee (Creek) Nation courts. Moreover, the relief Crowe seeks – an injunction prohibiting Defendant from enforcing the February 5 Order or from otherwise attempting to enforce the January 16 Order as it relates to Crowe – is prospective in nature. Therefore, in conjunction with the authority cited above, the Court finds that the *Ex Parte Young* doctrine mandates rejection of Defendant's assertion of sovereign immunity.[5]

---

[5] In his Motion to Dismiss, Defendant relies heavily on *Miner Electric, Incorporated v. Muscogee (Creek) Nation*, 505 F.3d 1007 (10th Cir. 2007), in arguing that sovereign immunity mandates dismissal. (*See* Def.'s Combined Mot. to Dismiss Compl. and Pl.'s Application for Prelim. Inj. 13-14.) Defendant also cited *Miner* in the hearing before the Court to support the assertion that the *Ex Parte Young* doctrine cannot be applied as an "end run around the immunity issue." The Court finds *Miner Electric* to be inapplicable to this case, however. In *Miner Electric*, plaintiffs sued the Indian tribe as opposed to tribal officials. The Tenth Circuit stated that it was not reaching the question as to whether any tribal officials were amenable to suit. *Miner Electric*, 505 F.3d at 1012 ("Here, because the Miner parties named only the Nation itself as a defendant, we do not reach the question whether any of the Nation's *officials* would be subject to suit in an action raising the same claims.").

**B.      Plaintiff's Alleged Failure to Join Indispensable Parties**

Defendant next argues that this case should be dismissed because Crowe has failed to join indispensable parties, as required pursuant to Federal Rule of Civil Procedure 19 ("Rule 19"). Specifically, in his Motion to Dismiss, Defendant argues that the following additional parties are necessary to the resolution of this litigation: (1) the entire Muscogee (Creek) Nation judicial branch; (2) the Thlopthlocco Tribal Town; and (3) the defendants in the Muscogee Lawsuit.  Defendant's Motion to Dismiss further contends that because joinder of the Muscogee (Creek) Nation judicial branch requires a waiver of sovereign immunity by the Muscogee (Creek) Nation, which has not occurred, this action must be dismissed. Defendant failed to present oral argument as to this issue during the hearing before the Court, leading the Court to question whether Defendant has abandoned this argument.

To the extent Defendant still asserts this argument, however, the Court finds Defendant has not sufficiently demonstrated that the Court is unable to accord complete relief among the existing parties, so as to make the above-listed  parties "required" under Rule 19.  *See* Fed. R. Civ. P. 19 (a)(1)(A) (stating that a party must be joined to an action if said party is "subject to service of process and joinder of said party will not deprive the court of subject matter jurisdiction" and "in that person's absence, the court cannot accord complete relief among existing parties").  Crowe's Complaint seeks to prevent Defendant from exercising allegedly unlawful jurisdiction over Crowe through enforcement of the February 5 Order or other efforts aimed at collecting Crowe's fees.  The Court is therefore able to accord relief without the addition of other entities.

**C.      Venue**

Finally, Defendant argues that in the event the Court denies his Motion to Dismiss, this action should be transferred to the United States District Court for the Eastern District of Oklahoma because venue is not proper before this Court.  Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[6]  The court must therefore determine "whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim."  *Multi-Media Intern., LLC v. Promag Retail Serv.*, 343 F. Supp. 2d 1024, 1033 (D. Kan. 2004) (internal citations omitted).  If the selected district's contacts are "substantial," it should "make no difference that another's are more so, or the most so." *Id.* (internal citations omitted).  Defendant maintains that venue is not proper in this Court because: (1) he is a resident of McIntosh County; (2) his judicial office is in the Okmulgee District of the Muscogee (Creek) Nation District Court which sits in Okmulgee; and (3) the "events or omissions giving rise" to this suit occurred in Okmulgee County.

The Court finds venue to be proper because a substantial part of the events or omissions giving rise to its claim occurred in Tulsa County.  Specifically, the fees paid to Crowe, which are the subject of the February 5 Order giving rise to this suit, were paid to Crowe in Tulsa and earned for providing legal services in Tulsa.  The desired retention of these fees gave rise to Crowe's Complaint, and the Court therefore finds a sufficient connection between Tulsa and the subject fees

---

[6] Venue could also be proper in (1) a judicial district where any defendant resides, if all defendants reside in the same State; or (2) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.  *See id.*  Neither of these provisions are applicable in this case.

to render venue proper in this district. *See Braude & Margulies, P.C. v. Fireman's Fund Ins. Co.*, 468 F. Supp. 2d 190, 195 n.1 (D.D.C. 2007) (action by law firm attempting to collect fees from proper client) (finding that venue was proper because law firm was located in forum district and rendered a substantial portion of the legal services giving rise to the fees in said district); *Clark v. Kick*, 79 F. Supp. 2d 747, 754 (S.D. Tex 2000) (finding venue in Texas proper in declaratory judgment action to determine the proper apportionment of fees, in part because "the work that the Texas attorneys performed on behalf of [the client], and thus the basis for the fees which were potentially earned by the Texas lawyers, was performed in this District").

III.    **Plaintiff's Motion for Preliminary Injunction**

Plaintiff moves for a preliminary injunction "enjoining [Defendant] from enforcing his February 5 Order or from otherwise attempting to enforce the January 16 Order as it relates to Crowe, until the pending litigation is resolved." (Pl.'s Mot. for Prelim. Inj. 6.)  A preliminary injunction is appropriate when: "(1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest."  *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1254-55 (10th Cir. 2006) (citing *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998)).

A.    **Irreparable Harm**

A plaintiff satisfies the irreparable harm requirement by demonstrating "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).  Purely speculative harm will

16

not suffice, but "[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative" and will be held to have satisfied his burden. *Id.* (internal citations omitted). Further, in determining this factor, the court should assess "whether such harm is likely to occur before the district court rules on the merits." *Id.* Economic loss usually does not, in and of itself, constitute irreparable harm because such losses are generally compensable by monetary damages. *See Port City Properties v. Union Pac. R. Co.*, 518 F.3d 1186, 1990 (10th Cir. 2008); *Heideman v. S. Salt Lake City*, 438 F.3d 1182, 1189 (10th Cir. 2003).

Applying this standard, the Court finds that Crowe has met the irreparable harm requirement. The Court bases such finding on the fact that there is a significant risk that Crowe will be forced to expend unnecessary time, money, and effort litigating the issue of their fees in the Muscogee Nation District Court – a court which likely does not have jurisdiction over it.[7] *See Seneca-Cayuga Tribe of Okla. v. State of Okla. ex rel David L. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989) (upholding trial court's grant of preliminary injunction and stating that Indian tribe would "be forced to expend time and effort on litigation in a court that does not have jurisdiction over them" in assessing harm to tribe if injunction were not issued); *Chiwewe v. BNSF Co.*, 2002 WL 31924768, No. 02-0387, *3 (D.N.M. April 15, 2002) (unpublished) (granting motion to preliminary enjoin tribal court proceeding based on argument that tribal court lacked jurisdiction to hear case) (finding BNSF would suffer irreparable harm if tribal court proceeding was not enjoined when BNSF would be "forced to expend unnecessary time, money and effort litigating in a court without jurisdiction over

---

[7] Although the underlying merits of Crowe's Complaint – which charges that Defendant is without jurisdiction over Crowe and its fee agreement with the Tribe – is not currently before the Court, the Court finds that Crowe is likely to succeed on such merits, as is discussed in more detail below. *See infra* Section III.D.

the case"); *UNC Res., Inc. v. Benally*, 518 F. Supp. 1046, 1053 (D. Ariz. 1981) (granting motion to preliminarily enjoin tribal court action when plaintiff argued that tribal court lacked jurisdiction) (finding that "it seems very probable that [plaintiff] will prevail on its claim that [the tribal court] lacks jurisdiction over it" and that plaintiff would be "faced with the possibility of irreparable injury if it were forced to appear and defend in [tribal court]").

Further, if this Court were to deny Crowe's request for a preliminary injunction, there exists a significant risk that Crowe would be subject to inconsistent judgments. Specifically, absent a preliminary injunction, it seems very likely that Defendant will require Crowe to return its fees to the Tribe's treasury. If this Court were to eventually declare that such a ruling was an excessive extension of tribal court jurisdiction, Crowe would be caught in the middle between two conflicting judgments, causing additional irreparable harm. *See Seneca-Cayuga*, 874 F.2d at 716 (noting the tribe would "risk inconsistent binding judgments" absent entry of the preliminary injunction when assessing the harm to the tribe); *Chiwewe*, 2002 WL 31924768, at *3 (stating BNSF would "risk having inconsistent binding judgments from two different courts if a preliminary injunction is not issued" when discussing the irreparable harm factor).

Finally, although monetary damages are normally not cause for a finding of irreparable harm, the Tribe's sovereign immunity makes this a unique situation. As argued by Crowe, if it is forced to return its fees to the Tribe, Crowe is without recourse to recoup said fees, as it cannot sue the Tribe due to the Tribe's sovereign immunity. While Crowe did represent that its contract with the Tribe involves a limited waiver of the Tribe's sovereign immunity, the Court is without knowledge as to the extent of such waiver and whether the waiver would be applicable in a fee-seeking suit. Moreover, in the event the Anderson defendants prevail, the Court finds it highly unlikely that they

18

would honor the Tribe's contract with Crowe.  Therefore, there is a significant risk that Crowe would be without legal recourse to retrieve any returned fees, causing it additional harm.  *See Kan. Health Care Ass'n v. Kan. Dep't of Social & Rehab. Serv.*, 31 F.3d 1536, 1543 (10th Cir. 1994) (agreeing with district court's finding that plaintiffs' injury was irreparable when defendant was immune from monetary damages); *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (stating that where "the plaintiff in question cannot recover damages from the defendant due to the defendant's sovereign immunity," any loss of income suffered by a plaintiff is irreparable *per se*); *Wisc. v. Stockbridge-Munsee Cmty.*, 67 F. Supp. 2d 990, 1019 (E.D. Wis. 1999) (finding irreparable harm when plaintiff would be unable to recover money damages from defendant tribe because of tribe's sovereign immunity).  For these reasons, the Court finds that Crowe has demonstrated a significant risk of irreparable harm if the preliminary injunction is not entered.

### B.      Balance of Threatened Injury and Damage Caused by Proposed Injunction

After determining the harm that would be suffered by the moving party if the preliminary injunction is not granted, the court must then weigh that harm against the harm to the defendant if the injunction is granted.  *Universal Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140, 1149 (D. Kan. 2007).  In this case, Defendant failed to clearly articulate the harm that would result to him if the injunction is granted.  In addressing this factor in his response to Crowe's Motion for Preliminary Injunction, Defendant cites the January 16 Order from the Muscogee (Creek) Nation Supreme Court.  Although not explicitly stated by Defendant, it appears he is attempting to argue that, if the injunction is issued, he will be harmed by being prevented from following the dictates of the Muscogee (Creek) Nation Supreme Court's Order because said Order rightfully requires the return of fees until the lawful governing body of the Tribe is determined.  The Court finds that Crowe's

19

injury – the wasted time, effort, and money spent on litigating a matter before a court who is likely without jurisdiction over it and the likely loss of its earned fees – outweighs the possible harm to Defendant.  Defendant's cited "harm" is really not harm to Defendant at all, as he has no personal interest in the funds and a delay in the exercise of Defendant's authority over Crowe will not cause any injury to Defendant.

### C.       Public Interest

In considering the public interest factor, the court is permitted to inquire whether there are policy considerations that bear on whether an injunction should issue. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.4 (2d ed. 1995).  Here, the Court must weigh the public's interest in permitting Defendant to exert authority over Crowe's fees against the public's interest in preventing the allegedly excessive exercise of tribal court jurisdiction.  In this case, the Court finds that an unrestrained exertion of tribal court power over non-consenting non-members is not in the public's interest, weighing in favor of the preliminary injunction.  *See Ford Motor Co. v. Todecheene*, 221 F. Supp. 2d 1070, 1088 (D. Ariz. 2002) (granting a motion for preliminary injunction where Ford claimed that a tribal court judge exceeded the limits of the tribal court's jurisdiction) (finding that allowing tribal courts to have unrestricted authority over non-members was not in the public's best interest).

### D.       Substantial Likelihood of Success on the Merits

Because Crowe has established that the first three factors weigh in its favor, the "substantial likelihood of success on the merits" factor is modified, and Crowe may meet this requirement by "showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Okla. ex rel. Okla.*

*Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006); *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255-56 (10th Cir. 2003).[8]  In support of its ultimate contention that Defendant is without jurisdiction to order the return of Crowe's attorneys' fees, Crowe makes two principal arguments.

      1.    <u>Tribal Court Jurisdiction Over Tribe's Expenditure of Funds and Agreements with Third Parties</u>

First, Crowe argues that the Muscogee Nation District Court has no jurisdiction over the Tribe's expenditure of tribal funds or its agreements with third parties. In assessing this argument, the Court looks to the Tribe's limited waiver of sovereign immunity, which states:

> [T]he Thlopthlocco Tribal Business Committee does hereby waive its immunity on a limited basis only for the purposes of adjudicating this dispute only, only claims brought by the Plaintiff, Thlopthlocco Tribal Town, and only for injunctive and declaratory relief.  This waiver of immunity shall not include election disputes.

(Ex. A-3 to Pl.'s Mot. for Prelim. Inj.)  Crowe argues that this waiver does not affect the Tribe's sovereign immunity as to issues regarding the Tribe's expenditures or contracts with third parties, and the Court finds that the Tribe is likely to succeed on such an argument.  A reading of this waiver does not indicate that the Tribe consented to tribal court jurisdiction over its representation agreement with Crowe or the fees paid to Crowe from the Tribe's treasury.  Accordingly, the Court has no trouble finding that this question is "so serious, substantial, difficult, and doubtful as to make

---

[8]  Certain types of injunctions are not entitled to this modified standard: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that he could recover at the conclusion of a full trial on the merits. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).  Defendant does not contend that the preliminary injunction requested by Crowe falls into any of these categories; nor does the Court find these categories to be applicable.

the issue ripe for litigation and deserving of more deliberate investigation." *Int'l Registration Plan, Inc.*, 455 F.3d at 1113.

### 2.   Tribal Court Jurisdiction Over Crowe

Second, Crowe contends that even if the Muscogee Nation District Court has jurisdiction over the Tribe, the court does not have jurisdiction over Crowe, a "non-consenting, non-Muscogee, unrelated third party." (Pl.'s Mot. for Prelim. Inj. 11.)  As held by the Supreme Court, Indian tribes are "distinct, independent political communities," qualified to exercise many of the powers and prerogatives of self-government. *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 128 S. Ct. 2709, 2718 (2008).  The sovereignty that Indian tribes retain, however, is of a unique and limited character and centers on the land held by the tribe and on tribal members within the reservation. *Id.*  Specifically, "tribes do not, as a general matter, possess authority over non-Indians who come within their borders: '[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.'" *Id.* at 2718-19 (citing *Mont. v. United States*, 450 U.S. 544, 565 (1981)).  "This general rule restricts tribal authority over nonmember activities taking place on the reservation, and is particularly strong when the nonmember's activity occurs on land owned in fee simply by non-Indians."   *Plains Commerce Bank*, 128 S.Ct. at 2719.

The Supreme Court has recognized two exceptions to the general rule prohibiting tribal jurisdiction over non-Indians within the reservation -- circumstances in which tribes may exercise "civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." *Mont.*, 450 U.S. at 565 ("*Montana* exceptions").  First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.*  Second, a tribe

22

may exercise "civil authority over the conduct of non-Indians on fee lands within the reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566.

Given *Montana's* "'general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe,'" *Atkinson Trading Co., Inc. v. Shirley*, 532 U.S. 645, 651 (2001) (quoting *Montana*, 450 U.S. at 565), efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are "presumptively invalid," *Atkinson*, 531 U.S. at 659. The burden rests on the tribe to establish one of the exceptions to *Montana's* general rule that would allow an extension of tribal authority to regulate nonmembers on non-Indian land. *Id.* at 654. These exceptions are "limited" ones, however, and cannot be construed in a manner that would "swallow the rule," or "severely shrink" it. *Id.* at 647, 655; *Strate v. A-1 Contractors,* 520 U.S. 438, 458 (1997).

In this case, the Court finds that Crowe has demonstrated a sufficient likelihood of demonstrating that neither *Montana* exception applies in the instant case. With regard to the first *Montana* exception, Crowe has not entered into an explicit contractual relationship with the Muscogee (Creek) Nation or its citizens, and the Court finds it doubtful that Crowe's mere appearance in the Muscogee Nation District Court is sufficient to confer jurisdiction upon it through *Montana*. Further, in relation to the second *Montana* exception, the Court is at this time unable to see how Crowe's conduct has in any way threatened or had an effect on the political integrity, economic security, health, or welfare of the Muscogee (Creek) Nation. For these reasons, the Court finds that Crowe has sufficiently demonstrated that the issue of Defendant's jurisdiction over it is "so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving

23

of more deliberate investigation." *Int'l Registration Plan, Inc.*, 455 F.3d at 1113.  Because the Court

finds that all four factors of the preliminary injunction analysis weigh in Crowe's favor, the Court

holds that entry of a preliminary injunction is proper.

> **E.     Bond**

Federal Rule of Civil Procedure 65(c) states that "[t]he court may issue a preliminary

injunction . . . only if the movant gives security in an amount that the court considers proper to pay

the costs and damages sustained by any party found to have been wrongfully enjoined or retrained."

The Court has "wide discretion under Rule 65(c) in determining whether to require security," and

the Tenth Circuit has upheld a district court's decision not to require a bond when there was an

"absence of proof showing a likelihood of harm." *Winnebago Tribe of Neb. v Stovall*, 341 F.3d

1202, 1206 (10th Cir. 2003).   In this case, Crowe argues a bond is not necessary because the

injunction will not result in any harm to Defendant.  The Court agrees. As noted above, the Court

does not find that Defendant will be injured by refraining to exercise authority over Crowe.  For this

reason, the Court exercises its discretion to not require a bond.

**IV.     Conclusion**

The Court DENIES Defendant's Motion to Dismiss Complaint and Plaintiff's Application

for Preliminary Injunction (Doc. 17) and GRANTS Plaintiff's Motion for Preliminary Injunction

(Doc. 11).  Defendant is hereby enjoined from enforcing the February 5, 2009 Order or from

otherwise attempting to enforce the January 16, 2009 Order as it relates to Crowe until this action

is resolved.  The parties are directed to file a Joint Status Report by Friday, May 8, 2009.

**ORDERED this 24th day of April, 2009.**

TERENCE KERN

24